IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CHANDLER E. BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | CIV-12-1272-HE |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
|   Acting Commissioner of Social | ) | |
|    Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of

Defendant Commissioner denying his application for supplemental security income benefits

under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 1382. Defendant has

answered the Complaint and filed the administrative record (hereinafter TR___), and the

parties have briefed the issues. The matter has been referred to the undersigned Magistrate

Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following

reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

Plaintiff protectively filed his application on April 14, 2009. (TR 128-130). Plaintiff

alleged that he became disabled on December 1, 1997, when he was five years old. (TR 156).

Plaintiff was seventeen years old when he filed his application, and he became 18 years of age on December 19, 2009. Plaintiff alleged he was disabled because of attention deficit disorder ("ADD"), anxiety, and depression. (TR 156, 206).

A copy of Plaintiff's ninth grade school transcript reflects that Plaintiff did not complete the ninth grade, and an attendance record reflects an inordinate number of school absences in the fall of 2008 and spring of 2009, although he received "homebound" schooling in April 2009. (TR 170, 171-175). In September 2009, Plaintiff's school advised his parent/guardian by letter that he had been absent "all or part of" the previous nine days without excuse. (TR 177).

Psychological testing conducted by consultative psychological examiners in November 2009 and June 2010 indicated Plaintiff had average to low average intellectual functioning and had achieved a high school reading level. (TR 249, 307). The medical record reflects Plaintiff was prescribed medication for ADD by a family treating doctor, Dr. Schoelen, beginning in September 2007. (TR 157-158, 235). In September 2009, Dr. Schoelen prescribed anti-anxiety medication for Plaintiff. (TR 223). Dr. Schoelen also prescribed narcotic pain medication for Plaintiff on multiple occasions between April 2008 and November 2009 for his complaints of left ankle and foot pain. (TR 222-234).

Between May 2008 and February 2010, Plaintiff was treated by an orthopedic specialist, Dr. Kirkpatrick, for a left foot injury. (TR 41, 275-287). Dr. Kirkpatrick diagnosed a possible fracture in May 2008, and in March 2009 the physician noted that MRI testing of Plaintiff's left foot showed "talar neck disruption" and "severe bone marrow edema

throughout the foot" for which a "fracture boot" was prescribed. (TR 275, 281). In April 2009, a physician's assistant in Dr. Kirkpatrick's office noted that Plaintiff's pain and range of motion in his foot had "improved" and that he exhibited full range of motion and was advised to "return to activities as tolerated." (TR 285). In February 2010, Dr. Kirkpatrick noted that he examined Plaintiff's left foot, that x-rays showed the talar neck fracture had healed, that Plaintiff exhibited good range of motion and a well-maintained ankle joint, and that Plaintiff was advised to return to any and all activities. (TR 287).

At a hearing conducted in May 2011 before Administrative Law Judge Gordon ("ALJ"), Plaintiff testified that he had a learner's permit but had not taken a driver's test, that he had no income and lived with his mother, and that he had previously worked for about two months as a roofer. On a usual day, Plaintiff stated he played guitar, sometimes for up to six hours at a time, watched television, used a computer, and helped his mother with chores and lawn work at their home. Plaintiff was taking prescribed medication for ADD but he sometimes did not take the medication, he took prescribed pain medication on an occasional basis for occasional left foot pain, and he took sleeping aid medication which allowed him to sleep a "full night." (TR 41-42). A vocational expert ("VE") also testified at the hearing.

In a decision dated June 20, 2011, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act either before he turned 18 or after he attained age 18. (TR 12-27). The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. § 416.1481; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

II. <u>Standard of Review</u>

In this case, judicial review of the final Commissioner's decision is limited to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. <u>Wilson v. Astrue</u>, 602 F.3d 1136, 1140 (10th Cir. 2010); <u>Doyal v. Barnhart</u>, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." <u>Lax v. Astrue</u>, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." <u>Wall</u>, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

The review of this case involves both children's benefits and benefits for an adult. With respect to Plaintiff's application for child's benefits, a child is considered disabled if he or she has "a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906. <u>See</u> 42 U.S.C. § 1392c(a).

In determining whether a minor child is disabled, the ALJ follows a three-step evaluation process. 20 C.F.R. § 416.924(a). <u>See</u> <u>Briggs ex rel. Briggs v. Massanari</u>, 248 F.3d 1235, 1237 (10th Cir. 2001(describing evaluation process). The ALJ first determines whether

the child is engaged in substantial gainful activity. If not, the ALJ determines whether the child has an impairment or combination of impairments that are severe. If so, the ALJ determines whether the child's impairment or impairments meet, medically equal, or functionally equal the listings in 20 C.F.R. pt. 404, subpt. P, app. 1. 20 C.F.R. § 416.924(a).

In determining whether an impairment functionally equals the listings, a determination that occurs only when the ALJ finds that the impairment does not meet or medically equal a listing, the ALJ must evaluate the child's functioning in each of six domains. Id. at §416.926a(b)(1)(I)-(vi). If the ALJ finds that the minor child has marked limitations in at least two of the six domains, or extreme limitations in one of the domains, then the claimant's impairment(s) functionally equal(s) the listings. Id. at. § 416.926a(d). A "marked" limitation occurs when an impairment "interferes seriously with [the minor child's] ability to independently initiate, sustain, or complete activities." Id. at § 416.926a(e)(2)(I). An "extreme limitation" is one that "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." Id. at § 416.926a(e)(3)(I).

With respect to Plaintiff's application for adult benefits, the agency must follow the well-established sequential evaluation procedure. See Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)(explaining five-step evaluation)(quotations and citations omitted).

III. Analysis of Listed Impairments Prior to Age 18

In the ALJ's decision, the ALJ found that before Plaintiff attained the age of 18 Plaintiff had severe impairments due to "slow learner (inability to focus), low mood disorder, Attention Deficit Hyperactivity Disorder, Generalized Anxiety, and depression." (TR 17).

The ALJ found that before he attained the age of 18 Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the agency's listed impairments. As support for this finding, the ALJ stated that "no treating or examining physician mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that meet or equal one of the listed impairments." (TR 17). The ALJ then found that before he attained the age of 18 Plaintiff did not have an impairment or combination of impairments that functionally equaled the requirements of a listed impairment. (TR 17-23).

Plaintiff contends that his impairments met or equaled the requirements of Listing 112.02 and Listing 112.06 before he reached the age of 18 in December 2009. Citing Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996)(bare conclusion that claimant's impairments did not meet or equal a listed impairment is "beyond meaningful judicial review"), Plaintiff contends that the ALJ did not properly analyze the evidence in determining Plaintiff's impairments did not meet or equal the requirements of a listed impairment.

Defendant Commissioner responds that even if the ALJ should have entered more explicit findings, the error was harmless where the ALJ's analysis of the issue of Plaintiff's impairments' functional equivalence provided a sufficient rationale for both findings.

The circuit court's decision in Clifton, supra, was clarified in Fischer-Ross v. Barnhart, 431 F.3d 729, 730 (10th Cir. 2005), in which the court "reject[ed] a construction of Clifton that, based on a reading of the ALJ's decision as a whole, would lead to unwarranted remands needlessly prolonging administrative proceedings." Thus, "[w]here

an ALJ provides detailed findings, thoroughly reviewed and upheld by the district court, that confirm rejection of the listings in a manner readily reviewable, requiring reversal would extend <u>Clifton</u> beyond its own rationale." <u>Id.</u> at 734.

In this case, although the ALJ did not identify the specific listed impairments or discuss the requirements of specific listed impairments in determining the Plaintiff's impairments did not meet or medically equal the requirements of a listed impairment, the ALJ's analysis concerning the functional equivalence question contains extensive and detailed discussion of the record in a manner that easily confirms rejection of the listed impairments.

Listing 112.02 for organic mental disorders requires evidence that meets or equals both parts A and B of the listing. Part A of the listing requires "[m]edically documented persistence of at least one of the following," including "[d]isturbance in mood (e.g., mania, depression)" and "[d]isturbance of concentration, attention, or judgment." 20 C.F.R. pt. 404, subpt. P, app. 1, § 112.02(A). Listing 112.06 for anxiety disorders requires "[m]edically documented findings of at least one of the following," including "[e]xcessive and persistent avoidance of strangers." 20 C.F.R. pt. 404, subpt. P, app. 1, § 112.06(A).

Assuming that Plaintiff's impairments satisfied the Part A requirements of one or both of these listed impairments, the Listings for these impairments also require that the claimant's impairments satisfy Part B of the listings as well (and the Part B requirements are the same for both listed impairments).

Part B of the Listings requires at least two of the following: "medical findings . . . and,

if necessary, the results of appropriate standardized psychological tests" showing "[m]arked impairment in age-appropriate cognitive-communicative function," "[m]arked impairment in age-appropriate social functioning, documented by history and medical findings . . . and, if necessary, the results of appropriate standardized tests," "[m]arked impairment in age-appropriate personal functioning, documented by history and medical findings . . . and including, if necessary, appropriate standardized tests," or "[m]arked difficulties in maintaining concentration, persistence, or pace." 20 C.F.R. pt. 404, subpt. P, app. 1, §112.02(B).

Plaintiff has not shown that his impairments satisfy the required criteria of Part B of the Listings. Plaintiff merely cites to pages in the record and states a conclusion mirroring the listings' requirements. The relevance of the page references is not apparent and lacks the specificity required to support his argument. See Effinger v. Callahan, 125 F.3d 861 (Table), 1997 WL 446724 (10th Cir. 1997)(unpublished op.)(stating court "has previously held that it will not comb through the record where counsel has not provided specific references tied to an argument")(citing SEC v. Thomas, 965 F.2d 825, 827 (10th Cir. 1992)).

Moreover, as the ALJ reasoned in the decision, no treating or examining physician has found that Plaintiff's impairments met or equaled the requirements of a listed impairment. In analyzing the functional equivalence issue, the ALJ considered the six domains of functions, including acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for yourself, and health and physical well-being.

The ALJ summarized the medical and non-medical evidence and found that with respect to the first functional domain, Plaintiff had less than marked limitation in acquiring and using information. The ALJ reasoned that the agency's medical consultant opined that Plaintiff had less than marked limitation in this functional domain, noting that Plaintiff's psychological testing (the WAIS-III test) indicated average verbal abilities and no indication of problems understanding, remembering, and carrying out tasks on the assessment. (TR 19)(citing Exhibit 8F at page 3).

Plaintiff asks the Court to reweigh the evidence and determine that the ALJ should have found he was markedly limited in his ability to acquire and use information because he "never graduated high school and has tried to complete his schooling on line but did not have the required ability to focus or concentrate." Plaintiff's Opening Brief, at 5. Plaintiff's conclusory argument is without merit, and the undersigned declines to reweigh the evidence as the Court's review is limited to determining whether there is substantial evidence in the record to support the Commissioner's decision.

Plaintiff has not shown that the agency's medical consultant misinterpreted the psychological test results, which provide substantial evidence to support the ALJ's finding with respect to the first functional domain. The ALJ's analysis of this functional domain also provides an adequate analysis of the evidence to support his step three finding that Plaintiff's impairments, before he attained age 18, did not meet or equal the requirements of Part B of Listing 112.02 or Listing 112.06 for "[m]arked impairment in age-appropriate cognitive-communicative function."

With respect to the second functional domain, the ALJ found that Plaintiff had marked limitation in attending and completing tasks. This finding provides an adequate analysis of the evidence with respect to the requirements of Part B of Listing 112.02 or Listing 112.06 for "[m]arked difficulties in maintaining concentration, persistence, or pace." However, the requirements of either Listing 112.02 or Listing 112.06 are not satisfied unless the claimant has two of the required limitations set forth in Part B.

With respect to the third functional domain, the ALJ found that Plaintiff had less than marked limitation in interacting and relating with others. (TR 21). The ALJ reasoned that the agency's medical consultants made this same finding and noted that during his consultative examination "Plaintiff was able to express himself with adequate articulation, but with very little emotional tone" and Plaintiff's "function reports indicate that the claimant had friends his own age, was able to make new friends, and was generally able to get along with others." (TR 21)(citing Exhibit 8F at page 3). Plaintiff has not challenged this finding, and it is well supported by the evidence. Plaintiff stated in a function report and to a consultative psychological examiner that he spent time most days with friends playing music. (TR 196, 307).

Although Plaintiff contends that there is evidence in the record of his "marked impairment in age-appropriate social functioning," which would satisfy one of the criteria of the Part B criteria of Listing 112.02 or 112.06, Plaintiff again merely strings page references behind conclusory statements, such as "[h]e cannot get along with others." Plaintiff's Opening Brief, at 3. The record shows Plaintiff's mother reported he was

generally isolated and withdrawn, although Plaintiff's statements did not support this subjective assessment. Plaintiff stated during the hearing that he was involved in "fights" in school, but he provided no details or school records to support this isolated statement. The ALJ's analysis of the evidence with respect to the functional equivalence finding is sufficient to provide support for the ALJ's finding that Plaintiff's impairments did not meet or equal the requirements of the Part B criteria for Listing 112.02 or Listing 112.06.

The ALJ found with respect to the remaining functional domains, moving about and manipulating objects, caring for yourself, and health and physical well being, that Plaintiff had no limitations. Plaintiff does not challenge these findings,[1] and the ALJ's findings are well supported by the evidence. Plaintiff's testimony and statements in the record did not indicate limitations in these functional areas.

The ALJ's step two and step three findings with respect to Plaintiff's application for child's benefits are supported by substantial evidence in the record. Any error in the ALJ's failure to more explicitly analyze the requirements of the listed impairments at § 112.02 and § 112.06 is harmless. Consequently, the Commissioner's decision should be affirmed as to Plaintiff's claim for child's benefits.

IV. Analysis of Listed Impairments After Age 18

With respect to Plaintiff's application for adult benefits, the ALJ found at step two that Plaintiff continued to have the same severe impairments. At step three, the ALJ found

---

[1]In his Reply Brief, Plaintiff concedes that the ALJ did not err in finding that he did not demonstrate a marked impairment in the functional domain of personal care.

that Plaintiff's impairments or combination of impairments did not meet or medically equal the requirements of a listed impairment. As support for this finding, the ALJ reasoned that there was "no opinion evidence provided by a treating or examining physician, which mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that meet or equal one of the listed impairments." (TR 23). At step four, the ALJ found that after attaining the age of 18 Plaintiff had the residual functional capacity ("RFC") to perform a full range of work "but with the following nonexertional limitations: the claimant is limited [in] the ability to interact with the general public; and he can only perform simple, 1 or 2 step tasks." (TR 24). At step five, and relying on the VE's hearing testimony, the ALJ found that Plaintiff was not disabled as he retained the capacity to perform jobs available in the economy, including the light, unskilled jobs of bench assembler, electrical equipment assembler, and press machine operator. (TR 26).

Plaintiff contends that the ALJ erred at step three by failing to conduct the proper analysis of his mental impairments and that his impairments satisfy the requirements of Listing 12.02. At step three, the ALJ "determines whether the impairment is equivalent to one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Bowen v. Yuckert, 482 U.S. 137, 141 (1987). "[S]tep three streamlines the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." Id. at 153. "If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled." Id. at 141.

In this case, the ALJ found that Plaintiff's RFC for work was limited by his mental impairments. "In a social security disability or Supplemental Security Income (SSI) case, an [ALJ] must evaluate the effect of a claimant's mental impairments on [his] ability to work using a 'special technique' prescribed by the Commissioner's regulations." Wells v. Colvin, 727 F.3d 1061, 1064 (10th Cir. 2013)(citing 20 C.F.R. §§ 404.1520a(b)-(d), 416.920a(b)-(d)).

"The psychiatric review technique described in 20 C.F.R. 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the 'paragraph B' and 'paragraph C' criteria of the adult mental disorders listings." SSR 96-80, 1996 WL 374184, *4 (1996). "[T]he limitations identified in the 'paragraph B' and 'paragraph C' criteria . . . are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." Id. The ALJ is required to "incorporate the pertinent findings and conclusions" from the PRTF in the decision. 20 C.F.R. §§ 404.1520a(e)(2), 416.920a(e)(2).

The Commissioner concedes that the ALJ erred by not undertaking the appropriate analysis of functional limitations resulting from Plaintiff's severe mental impairments and making the proper findings and conclusions in the decision. The Commissioner asserts that the error is harmless, however, because the ALJ's analysis included sufficient findings to support the step three determination. See Fischer-Ross, 431 F.3d at 733 ("[A]n ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed

impairment.").

The Commissioner first contends that the ALJ's findings with respect to the functional equivalence issue can support the ALJ's step three finding with respect to Plaintiff's application for adult benefits. However, the child's benefits application and the adult's benefits application employ different standards and relate to different age categories. As such, evidence related to a child's benefits application may not be applied to support the ALJ's findings regarding an adult's benefits application.

The Commissioner also argues that the ALJ expressly relied on the opinion of the medical consultant, Dr. Kendall, Ph.D., who did conduct the required analysis and opined that Plaintiff exhibited only moderate functional limitations and no episodes of decompensation. (TR 24, 319). Additionally, the Commissioner asserts that in the ALJ's step four RFC assessment of Plaintiff's functional abilities the ALJ properly determined that Plaintiff's mental impairments did not meet or equal the requirements of the relevant listed impairments.

In the ALJ's discussion of Plaintiff's functional limitations at step four, the ALJ discussed the report of the second medical consultant, Dr. White, Ph.D., who examined Plaintiff in June 20, 2010. The ALJ recognized Dr. White's report that Plaintiff exhibited average intellectual functioning in psychological testing, that Plaintiff exhibited normal thought processes and well organized thinking, and that Plaintiff exhibited the ability to engage in social functions, like playing guitars with friends, but that Plaintiff "demonstrated difficulty when asked to perform tasks calling for sustained concentration and attention." (TR

24).

The ALJ also discussed in the decision the report of the non-examining psychological consultant, Dr. Kendall, Ph.D., who completed a Mental Residual Functional Capacity Assessment ("MRFCA") on September 2, 2010. (TR 24)(citing Exhibit 11F). Dr. Kendall found that Plaintiff had moderately limited abilities to understand, remember, and carry out detailed instructions, moderate limitations in interacting with the general public, and the ability to perform simple and some complex tasks in a familiar setting with routine supervision, the ability to relate to others on a superficial basis, and that he would "work best in a setting with limited noise and activity in his work area." (TR 325).

In arguing that Plaintiff's mental impairment satisfies the requirements of Listing 12.02, Plaintiff again merely cites to pages in the record and states a conclusion mirroring the listing's requirements. The relevance of the page references is not apparent and lacks the specificity required to support his argument. Listing 12.02 for organic mental disorders requires "[h]istory and physical examination or laboratory tests demonstrat[ing] the presence of a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.02. Part A of the Listing's criteria requires

> [d]emonstration of a loss of specific cognitive abilities or
> affective changes and the medically documented persistence of
> at least one of the following:
> 1. Disorientation to time and place; or
> 2. Memory impairment . . .; or
> 3. Perceptual or thinking disturbances (e.g., hallucinations, delusions); or
> 4. Change in personality; or

> 5. Disturbance in mood; or
>
> 6. Emotional lability (e.g., explosive temper outbursts, sudden crying, etc.) and impairment in impulse control; or
>
> 7. Loss of measured intellectual ability of at least 15 I.Q. points from premorbid levels or overall impairment index clearly within the severely impaired range on neuro-psychological testing, e.g., the Luria-Nebrasks, Halstead-Reitan, etc.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.02(A). Part B of Listing 12.02 requires at least two "marked" levels of functional limitations in daily living activities, social functioning, or maintaining concentration, persistence, or pace.

Even if Plaintiff's mental impairments satisfied the Part A criteria of Listing 12.02, the ALJ made step four findings sufficient to support his finding of nondisability at step three. There is substantial support in the record for the step three and step four RFC and credibility assessments. Plaintiff's educational record indicates that he simply did not attend classes regularly in 2008 and 2009, not that he was unable to concentrate. Plaintiff stated he can play his guitar "for hours [and] hours." (TR 196). His mother indicated that his "laziness," lack of "motivation," and "procrastination" behaviors, all of which are voluntary, attitudinal behaviors as opposed to mental disorders, contributed to his educational and work-related problems. (TR 180, 181, 182). Plaintiff and Plaintiff's mother both stated that he spent time with friends, could follow written instructions, and he could drive but had not obtained a driver's license because of lack of "money and time," not any intellectual deficit. (TR 37, 186, 195, 196, 197). As the ALJ appropriately pointed out, Plaintiff stated during both consultative psychological evaluations that he wanted to go to college, that he stated he could sit at a computer for up to 6 hours at a time looking up music to learn to play on his

guitar, and that the record lacked any history of psychiatric treatment. (TR 25). As the ALJ also appropriately pointed out, the consultative psychological examiner, Dr. Krimsky, found that Plaintiff's testing results were not consistent with a diagnosis of ADD. (TR 251).

Plaintiff stated in a letter to school officials in September 2009 requesting an alternative educational program that he wanted to succeed in school and graduate but that he did not feel challenged in regular classes. (TR 201). His letter indicated he felt he should be placed at a "higher level of academic grade and performance." (TR 201). Plaintiff stated he "procrastinate[d] around the house," that he simply did not like knowing that he was confined on "school property," and that he could not stay focused on school work when he did not "feel like doing something" in class. (TR 206, 209, 306). Plaintiff also indicated he was consciously non-compliant with his ADD medication. He stated "[s]ometimes I neglect certain [personal] care when I take breaks from my ADD medications." (TR 217).

"The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." SSR 96-8p, 1996 WL 374184, at *1. In this case, as the ALJ pointed out, no treating or examining physician or mental health professional found Plaintiff's mental impairments were disabling. The ALJ gave "substantial weight" to Dr. White's opinion, including Dr. White's assessment of Plaintiff's intellectual and social functioning and his assessment that Plaintiff had difficulty with concentration and attention when performing tasks during the evaluation. (TR 24). The ALJ also obviously relied on the opinions of the state medical consultant, Dr. Kendall, concerning Plaintiff's

work-related functional limitations, including Dr. Kendall's assessment that Plaintiff's mental impairments caused moderate functional limitations on his ability to work. (TR 24).

Contrary to Plaintiff's assertion, the ALJ did not err in relying on Dr. Kendall's opinion in the more recent MRFCA completed after Plaintiff's second mental status evaluation by Dr. White, as opposed to the earlier MRFCA completed by Dr. McKee in February 2010. (TR 254-256, 323-325). Further, Plaintiff's argument that the ALJ failed to explain why he adopted Dr. White's MRFCA rather than Dr. McKee's MRFCA in making the RFC assessment is meritless.

Dr. McKee was not a treating or examining physician, and therefore his opinion was not entitled to controlling or any significant weight. Dr. McKee found that Plaintiff could "understand, remember, [and] carry out simple tasks that are routine [and] structured in nature [with] routine supervision performed in a familiar setting [with] limited public contact" and could "relate to supervisors [and] peers on a superficial work basis." (TR 256). Even assuming that the ALJ should have incorporated Dr. McKee's MRFCA findings in the RFC, the ALJ limited Plaintiff to the performance of simple, 1 or 2 step tasks, and to jobs with limited interaction with the public. (TR 24). Based on hypothetical questioning that included this RFC for work, the VE testified that Plaintiff could perform three jobs. Plaintiff has not shown that the jobs forming the basis for the ALJ's step five nondisability finding required abilities inconsistent with Dr. McKee's opinion. (TR 48-49).

Nor was the ALJ required to explain what weight he gave to the opinion of the first consultative psychological examiner, Dr. Krimsky. (TR 249-251). The ALJ recognized the

report of Dr. Krimsky and incorporated Dr. Krimsky's diagnostic impression of "low mood" in the step two findings. Dr. Krimsky did not opine that Plaintiff was disabled. To the contrary, Dr. Krimsky reported, and the ALJ recognized in the decision, that Plaintiff's testing showed he was functioning with "average" intellectual ability, that Plaintiff maintained concentration during psychological testing for two hours, and that the testing did not support a diagnosis of ADD. (TR 18, 25, 249, 251).

In the step four RFC assessment, the ALJ also considered Plaintiff's credibility. The ALJ's credibility assessment included a discussion of Plaintiff's ability to concentrate and focus. The ALJ found that "[d]espite his allegations of inability to concentrat[e] and focus, [Plaintiff] indicated that he was able to sit at the computer for up to 6 hours at a time looking up music to learn to play on his guitar. This testimony was also inconsistent with his testimony that he is a slow learner." (TR 25). The ALJ also pointed out in this discussion that the record contained no history of psychiatric treatment, that psychological testing for ADD did not reflect signs consistent with attention deficit disorder, and that his most recent test scores indicated he was functioning in the average range of general intelligence. (TR 25). The ALJ also reasoned that in terms of social functioning, although Plaintiff complained of difficulty with social functioning he reported to Dr. White that he played guitar with his friends and that his "description of the symptoms and [functional] limitations . . . [had] generally been inconsistent and unpersuasive." (TR 25). There is substantial support in the record for the ALJ's step four assessment, which included discussions of Plaintiff's daily living activities, social functioning, and ability to concentrate sufficient to support the step

three determination.

Additionally, there is substantial evidence in the record to support the ALJ's step four finding that Plaintiff's subjective testimony was not entirely credible. The ALJ referred to medical evidence in the record, including the report of the consultative psychological examiner, Dr. White, concerning Plaintiff's mental status examination conducted in June 2010 and Dr. White's conclusion that Plaintiff's psychological testing did not indicate signs of ADD and his most recent testing indicated average intellectual functioning. The ALJ also pointed out inconsistencies between Plaintiff's subjective statements in the record. For instance, the ALJ noted that Plaintiff stated he wanted to go to college, and that he stated "he was able to sit at the computer for up to 6 hours at a time looking up music to learn to play on his guitar." (TR 25). Plaintiff complains in his opening brief that he actually stated during the hearing he plays his guitar for six hours at a time, and not that he did so without taking breaks. This argument is disingenuous and conflicts with the record of the hearing and the report of Dr. Krimsky concerning Plaintiff's ability to concentrate during psychological testing.

The ALJ also reasoned that there was no history of Plaintiff receiving mental health treatment despite his assertion that he suffered from severe anxiety and depression. (TR 25). Plaintiff complains that this statement is not correct because one consultative examiner noted that Plaintiff had tried counseling for about three weeks. It was actually Plaintiff's mother who made this statement to Dr. White. (TR 306). Again, this argument is disingenuous in light of the absence of evidence of mental health treatment in the record. The ALJ reasoned

that Plaintiff reported he played guitar with his friends, and Plaintiff admits that he has friends.

Plaintiff complains that the ALJ should have considered other evidence in the record, but Plaintiff again merely makes conclusions and cites to page references without adequate explanation as to the significance of the page references. There is nothing in the record showing that Plaintiff's chronic school absenteeism or difficulties getting along with his sibling or teachers were related to a mental impairment. Plaintiff had not sought mental health treatment for social functioning difficulties, and he reported he was not compliant with his ADD medications. The ALJ did not err in addressing each of Plaintiff's subjective statements in the record.

Because there is substantial evidence in the record to support the ALJ's step four and step five determinations, the Commissioner's decision should be affirmed.

RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before ___November 25th___, 2013, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421,

1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this _____5th_____ day of _____November_____, 2013.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE